Good morning, Your Honor. My name is Dan Noder. I represent the appellant, Mr. Ralston Williams. Your Honors, mass incarceration of drug defendants is one of the most pressing issues affecting the criminal justice system now, especially affecting and disproportionately burdening poor persons of color. In 2014, the US Sentencing Commission promulgated Amendment 782, which was intended in large part to help ameliorate that issue, finding that the 3553A factors, as applied to the then-present drug guidelines, tended to overestimate by several years the effective sentence that should be done in such cases. This Court, and as well as by statute, Section 3582C2, established procedures for how a defendant, such as Mr. Williams, are supposed to go about getting a sentence reduction in this case. And I would submit, Your Honor, that those procedures were not followed in this case, as they should have been under this Court's law and under 3582, and that that requires a remand. In particular, the district court below failed to consider, as this Court has required, Mr. Williams' exemplary and unblemished post-sentencing conduct since. I'm sorry, on what basis do you say that the district court failed to consider that? Her explanation for the sentence that she gave in the new guidelines range was brief, but I'm not sure that we should presume that the district court failed to consider that there was a new range, or the factors that were in the record that incarcerated to a repeat. I think that's a very fair question, Your Honor. I think I actually, on page four of the reply brief, I have the entire verbatim reasoning that the district court gave. If you want to sort of look along with me, you see it is almost entirely boilerplate of everything that the district court says that she's considering, took into consideration the factors set forth in the 3582. Almost everything, except that it specifically excludes any of the mention of the post-sentencing conduct that this court has stated is necessary. I think sort of under the principle of it. You say it specifically excludes. You mean it just doesn't mention it? Well, I think it's sort of the espresso unis principle here. Mentioned? Yeah. So when practically every single thing, almost going down a boilerplate checklist is there, and this one thing that isn't there, especially when it's something that if it were considered would seem to have been powerful support for Mr. Williams having the full reduction in his sentence that he sought, and more likely would have even given some rebuttal to this notion about Mr. Williams' remorse or presumed lack thereof, demonstrating the way that since his sentencing he has been nothing but a model prisoner in terms of seeking to remedy himself. It's your main complaint, right? Isn't it that the district court judge didn't give a full enough explanation of why on the first sentence the sentence was placed at one point in the guidelines range and in the second sentence it was placed at another point in the guidelines range? That's certainly a major issue. But I would say that the major issue, let me put it in the easiest way to describe it. Let's say you are overcharged by, say, $35 for something. You go to the store to get your refund and the store gives you, say, $15 back on the $35. You want to know first why the store is not giving you the full refund that it seems that you believe you should be entitled to. Here, the reason for the so-called refund is this finding that across the board as a class, drug defendants have been over-sentenced by approximately three years in all these cases. Mr. Ralston, who has been a model prisoner since his original sentencing, with the government not opposing any sentence reduction, you know, comes in, he has a new recalculated guideline that's about three years less than what his guideline was before. And, you know, he was sentenced to the low end of the guidelines 168 months before. And it's not unreasonable for him to expect coming in that he is again going to get the low end of the recalculated guideline, the one that no longer suffers from the infirmity that the sentencing guideline found that it had before. Is there any, go ahead, please. But the reduced, he was sentenced within the reduced range. He was, he was sentenced to approximately the midpoint of the reduced range, which was 16 months off. But the range as a whole was lowered by about three years. Yeah, I understand. Are you saying that alone would require a reversal failure to again sentence at the low end of that? Well, again, I say it's, we did not fundamentally raise the substantive challenge. In this case, it's fundamentally a procedural challenge that certain things were not considered. We believe that the district court should have the opportunity to consider these things in the first place, you know, or at least to indicate that she has considered these things. And then if after that, there is still a substantive issue to be raised, that would be- You're really saying there's a kind of presumptive entitlement to sentencing at the same point in the range as the individual was initially sentenced. And absent that, the district court has to provide an adequate explanation to rebut the entitlement. No, I would say the second part, I would agree. And I would disagree with the first part of what you said. I do not think there's any presumption regarding that. But what I do say is that the, is that this court has frequent, has said that when the court takes a completely different approach than it originally took without providing the explanation for why, then that can be an abuse of discretion. And what we're saying here, and that's why there's a focus on the procedure here, is to provide the support for why the court has now decided to take this different approach than the court took the first time around. But what the court had to do was say, notwithstanding the prisoner's exemplary record while incarcerated, I still find that his earlier display of lack of remorse makes me believe that this is the appropriate sentence for him. Had the court done that, I think I would have a much weaker argument than I have now, that's for certain. He has a right to appeal. I might be raising different issues or raising this one in a different way. But the fact that the court did not do the precise thing that you said in your question to me is precisely why. It's that issue, not an entitlement or presumption, which is why remand is necessary in this case. Thank you. We'll hear you in the rebuttal. Good morning, Your Honor. My name is Michael Runowitz. I'm an assistant United States attorney for the District of Connecticut. And I represented the government in the 3582 proceedings before the district court. The government would submit that the district court in this case, in reducing Mr. William's sentence by 16 months, committed no error, let alone reversible error, in reaching that conclusion and entering the judgment it did and asked that the court affirm the decision below. As the court is well aware, with respect to the 3582 proceedings, the district court has two obligations. One, first, to make a determination whether the defendant is entitled to a reduction based on an amended guideline range. And there is no dispute in this case that Mr. Williams was entitled to that. Not only the probation office found it, the government concurred with it in its filings with the district court. And the district court found it implicitly in recalculating the defendant's range to 135 to 168 months. Then at that point, once the person has qualified for consideration of reduced sentence, it's up to the district court to consider the 3553 factors to determine whether or not, one, a reduction is warranted and, if concluding that a reduction is warranted, to the extent of that reduction. And I submit the record before the district court and before this court is that the court followed its obligations under 3553 and made a determination based on all the facts and circumstances of this case, having tried Mr. Williams and having sentenced him initially and seeing his lack of remorse at sentencing and his efforts to downplay his responsibility for the distribution of heroin, which led to the death of a 23-year-old woman, the decision that the court made comports with the discretion that the district court is entitled. In this particular case, when the initial sentencing was imposed, the court determined that the lowest sentence that it could impose on the defendant was 168 months. Subsequently, after the amendment to the 782 Amendment came through under 3552, the district court changed its decision and reduced the sentence to 16 months. I submit, Your Honor, it's implicit that the district court and the district court said it considered the 3553 factors, including Mr. Williams's post-sentencing conduct. The district court said she considered the post-sentencing conduct? If I said I misspoke, it's implicit in it, in that when she initially put- Shouldn't it be explicit? I mean, we've said that in determining whether to modify a sentence, the judge must consider not only the tradition sentencing factors, but also the post-sentencing behavior. Why wouldn't it be reasonable to require a judge to address that? Well, Your Honor, this court has presumed in a number of cases that the district court carries out its responsibilities and considers all the 3553 factors, unless there is some indication in the record that the court was remiss in doing so. There is no such evidence in this record that would suggest the court did not follow all the 3553s. This court has also not required a district court judge to give reasons as to why they did not give a particular sentence. The post-sentencing behavior, would you consider that a 3553A factor? I see it as something in addition that is relevant on modification of sentence. Well, I certainly concur with the court, but under 1B1.10 of the guidelines, the guidelines suggest that the court may consider it. Now, I know this court has some cases, and in fact, as cited in counsel's brief, the Rivera case had suggested that that was mandatory. All I could say with respect to that in the Rivera case, that was dicta, Your Honor, and it was really dicta that really didn't pertain to the issue at hand. A subsequent case, for example, the Wilson case, which is cited in the government's brief as well, which was several years afterwards, again, reiterated that under 1B1.10, consideration of post-sentencing conduct is a may decision for the district court, not necessarily a shall. But either way, the government would submit that under the records of this case, and the only factual changes from the time the initial sentence was imposed to the time that the court gave its reduced sentence was the fact that there was a guideline change based on the amendment, but also that the court had been apprised, one, that Mr. Williams had a, he had not been cited for any kind of misconduct while in jail, and also in his Bureau of Prison's progress report that he had engaged in some educational types of conduct, courses that were, if you look at the progress report, suggests that he was attempting to develop some business skills. That was one of the factors that the district court was quite concerned at the initial sentencing, Mr. Williams, he was engaged in dealing with heroin, not because he was an addict, not because he was feeding his own habit, he was simply doing it from an economic point of view, and he had, and the record before the district court indicated that he had no other means of income other than drug distribution. So to that extent, the fact that he was engaged in these types of courses would suggest that perhaps he is trying to make somewhat of a change, and I think the court, that information was before the court, and it's implicit that in deciding to reduce the sentence that the court considered and took it, and used that as a basis for its decision. What about the remorse question? That's what the district court cited in the very brief explanation, but I read your brief to suggest that the appellant didn't really have the due process right to address the court's renewed focus on lack of remorse, and you just described some of the changed circumstances that may suggest that, in fact, he now had a more fully developed sense of remorse. Does he have a right to address that? Did the court need to tell him about that ahead of time, and if so, did he have an adequate opportunity? I would suggest that that's not necessarily that he had an absolute right to be apprised of. Remorse, his lack of empathy, was always in this case. It was clearly one of the driving factors of the district court when the district court imposed its initial sentence. Now, to the extent that this was not, again, iterated by counsel, he did have a point of counsel, did not file a motion on his behalf, the fact remains that, I'm sorry, I kind of lost my train of thought on that. He had an opportunity to address remorse? He did, Your Honor, and to the extent that the district court was well aware of his lack of remorse, his lack of empathy, the egregiousness of the conduct. His two years had elapsed, though, right? He was sentenced in 2013, and then on the resentencing, that was in 2015. Correct, that's correct. But the district court cited the lack of remorse and focused on that in a very, very sparse explanation. So didn't he have a right to address that before the district court reached a final determination about the new sentence? I'm not so sure, necessarily, did he have a right. Under 3582, the court, sua sponte, can address a sentence. Based on an amendment to the sentencing guidelines. And in this particular case, under the protocol that was adopted by the District of Connecticut, for all of these, there was a standing order which provided various different scenarios, but with respect to this type of scenario here, where the probation office filed an addendum recommending that the individual was eligible for consideration. The standing order simply provided that with the filing of that addendum, the parties had 21 days to provide any information to court. And at that point, the court could take action on it. So the court anticipated, basically, doing an action with or without any input from a defendant. And I think, so to the extent that he said he had a right, he could have, but I don't know necessarily it was an enforceable right. Is there any sign here at all that the judge revisited the sentence in light of what may have transpired in the intervening couple of years? The government, the court, basically. I don't see any, so you can point one out. Could the court have been much more expansive in what it said? Yes. Yeah, but your reductionist argument is the court really is not to say anything, because we always presume that the court considers everything. Well, there has to be an, no, but there has to be an... We have to be able to review that. No, there has to be, I'm sorry, I didn't mean to... No, go ahead, yeah. There has to be an explanation for the decision that the district court made. And the decision that was made in this instance is a resentencing, presumably based upon the defendant, as he stood before the court then. I mean, if the defendant, if the prisoner had killed his cellmate, that would be before the court, and it would be a legitimate thing to consider, wouldn't it? Well, it certainly would be post, that the court may consider. Right, so the question becomes, isn't it salutary to require some visible reflection on what happened in the post-sentencing era, both for assuring that the court has considered the current character of the person being sentenced, as well as being conducive to good order in the prisons, that people who don't create trouble are likely to get a better deal if a resentencing should have to be required? Well, in this case, the defendant did get a better deal for that matter, but to the extent that this court has always been very careful not to require the district court to have to produce robotic incantations, I guess is the term used in the Fernandez case. And to a certain extent, and under the facts and circumstances of this case, with the court having tried the defendant, knew the defendant, knew the defendant's demeanor, and had reached its conclusions, to send it back for a further explanation, certainly that's within the power of this court. To me, it almost sort of gets close to the bordering of- Well, it certainly would be helpful, Your Honor. It would certainly be helpful to this court, as well. I wouldn't disagree. But the fact that the district court could have been more expansive doesn't necessarily mean that what she did say was not sufficient. That's all I would say to the court. And unless the court has any other questions, I'll rely on the briefs and ask that the district court's decision below be affirmed. Thank you. Mr. Nutter, we'll hear a rebuttal. Yes, just a couple of very brief rebuttal points, Your Honors. First, with respect to the question, my friend for the government suggested that this court's repeated statements, such as in Rivera, were sort of mere dicta about the necessity of considering the post-sentencing conduct. That's simply not the case. That Wilson case, for example, that the government stated, I'm quoting from the Wilson case, quote, a judge must consider not only the traditional sentencing factors set forth in 18 U.S.C. section 3553A, but also the post-sentencing behavior of the defendant. So that's been in Wilson, that's been in Rivera, that's been in at least one other case, Nichols, which was a summary order since then. So I would suggest, Your Honor, that it's settled in this court that that is not merely allowable, but required. Must consider is one thing, must recite is something else. Well, that is true. But with respect to, for example, these robotic incantations, I would suggest that the explanation is given is something of a robotic incantation, and yet it still does not include any reference to this. The second point I wanted to make quickly regarded the necessity of notice to the defendant, which came up. Although this court has not touched on it, at least three of the sister courts have. The Fifth Circuit in Muller, the Seventh Circuit in Foster, the Eleventh Circuit in Jules, which are all cited in the brief, all talking about the way that due process requires that the person have notification and a reasonable opportunity to respond if there is going to be a new idea to be considered. And the final thing I just want to note is that in response to the government's suggestion that this was all already just sort of part of the record and it had already been considered this whole remorse issue, it's true that there was in fact a whole sentencing hearing held several years ago, and Mr. Williams had a number of people speak on his behalf as well. There was a very lengthy victim impact statement that the government submitted, which in my opinion has a lot of improprieties to it, but that's not an issue before the court at this point. And as a result of all of this, hearing all of this, being in the midst of all this, the court made a determination to sentence at the bottom of the guidelines. In the Dillon case, Dillon v. United States, which again, the government sort of framed its argument by talking about this two-part analysis, but Dillon goes out of its way to say that we have lesser procedures now because we're not gonna have a plenary re-sentencing. It's not to start reconsidering things that were already considered as part of the real sentencing that you got when you had the opportunity to actually be there and present evidence and have your support, and the other side has their support. That's what happened several years ago. That's when the district court considered all the arguments, including Mr. Williams' argument for a downward variance, and decided amongst all of these things that the sentence at the bottom of the guidelines was sufficient, considering, if you believe, if you accept what the government is saying now, his remorse or lack of remorse at that time as part of this constellation of considerations at that original sentencing. It seems apparent from the record that the district court has considered that aspect in a different way now, it appears. At least we don't know what the district court did or how the district court is purporting. I'm not sure why you say that. I mean, she cited remorse the first time around, she cited remorse the second time around, or the lack of remorse, and he was heard extensively at the first hearing. This was not a new issue, so what's different? I mean, I feel it is different for a couple of reasons. One is that to the extent remorse was considered, it was considered among all these other mitigating aspects, which, and the court, to the extent that her initial determination was based at all on this remorse issue, made that as part of this constellation of mitigating circumstances as well, including all the, his own remorseful statements, and the support of the various people in the community and his family who came and testified on his behalf. I mean, I certainly don't, especially beyond my rebuttal time, want to be getting into something that isn't even in the issue here. I mean, this is an issue that's forfeit now, but there was, frankly, he never should have gotten up and spoken in the first place. He did in response to a victim impact statement that, had this been before a jury, would have been constitutional error. I mean, here it wasn't, but it was for the mother to be saying, this is page 40 of the joint appendix, Mr. Williams' consequences should be maximum enhanced incarceration, maximum monetary penalization, maximum probation. He should be mandated to sit in on drug rehabilitation, blah, blah, blah, and finally he should be deported. You know, I mean, this is all way beyond the kind of acceptable victim impact statement that the court, in cases like Booth, you know, that they recently reiterated. We are headed afield here. Yeah, sorry, this is part of it. All I'm suggesting is that, you know, to the extent that remorse was here at all, this was part of sort of arguably a problem with the original sentence that should not be sort of doubled down on now. At least there should be an opportunity for Mr. Williams to respond to that concern now, since it's his remorse now that matters. Thank you, thank you both. We'll reserve decision.